Case of the Day, Number 20-20062, United States of America v. Christian Rodriguez, or Fuentes Rodriguez. Let's see. Ms. Myers, good morning. Welcome. Good morning, Your Honor. It's Margie Myers, representing the defendant appellant, Mr. Fuentes Rodriguez. The issue in this case is, of course, whether or not the search of the vehicle was unconstitutional. There are three matters to be addressed. One is, raised for the first time on appeal by the government, whether or not Mr. Fuentes  Secondly, whether the search can be upheld under the doctrine of inevitable discovery. It's not an inventory search, but it depends on the inventory search case law whether it's inevitable discovery. And finally, if that doesn't work, whether or not the officer had probable cause to search the vehicle, either because he thought it was stolen or because he claimed that he smelled marijuana. Turning to the issue of standing, as I belabored in my reply brief, the government never raised that below. The court, in its kind of musings before it ultimately ruled, suggested that Mr. Fuentes Rodriguez might not have standing because he was not the owner of the vehicle. The government says we didn't present evidence to address that. Nobody ever challenged his standing. That was at the end. In fact, the court's ruling was the motion is denied based on the pleadings and the evidence, and all of the pleadings and the evidence, none of that addressed standing. If we're to reach the issue of standing . . . And I take it, Ms. Myers, this is not like the standing like we normally think of it, where we can reach it on our own motion because it's jurisdictional. This is a different kind of standing? Exactly, Your Honor. It is something the district court could raise sua sponte, which is why I do think I need to address it because the district court talked about it. I think under the case law, we met our burden of proving standing, which is a legal issue. Mr. Fuentes Rodriguez, the government presented the entire case as Mr. Fuentes Rodriguez was the owner, the driver, and the sole occupant of the vehicle. They never challenged standing. Okay, what . . . I mean, don't we get right down to the basics of it by asking whether this was a proper inventory search after the car had been seized? Certainly, Your Honor. I wanted to make sure standing wasn't an issue, and I think under Byrd, even if he's a lawful borrower, the evidence is unrebutted, not inconsistent, that he had authority to drive the vehicle. I think the Second Circuit case in Lyle is simply wrong. Turning to inevitable discovery, Your Honor, and the inventory search, what did the officer know when he decided to keep the vehicle? I know that the district court actually said he was detaining it to release it to the rightful owner, not that he was keeping the vehicle. I think that's very important because what he knew were pure regulatory violations. He admitted, he testified, even at the time that he knew Mr. Rodriguez didn't have insurance and didn't have a driver's license, he was going to release the vehicle to another person. Even if we believe that he smelled marijuana, he was going to release the vehicle to another person. I'm sorry if I'm looking at Judge Jolly. It's answering your question. You're doing very well. I'm addressing everybody. But anyway, so what it comes down to is the VIN didn't match the plates. Even when he knew that the plates didn't match the car, because on that second meeting, he knew that the plates didn't match the car. He hadn't just determined that the VIN didn't match. There was no basis, the government presented no basis, to seize or impound the vehicle. I think this court— What more would the government need to have probable cause that the car was stolen? Because normally you would run the plates and you would have some evidence that the car was stolen. But if you run the plates and all you can figure out is that none of this matches, the license, the tags are expired, the tags don't match the VIN, the VIN doesn't match the color, or what is it, the color, the make, the model, the year, et cetera. It would seem to me that that would be probable cause that something is amiss with the ownership of the vehicle. I don't—with all due respect, Your Honor, I don't think it is. I think the D.C. Circuit in Jackson makes it very clear that it doesn't rise to the level of probable cause. So what more would the government need? The cases, and the government cites a bunch of cases for the obvious proposition that if you think it's stolen, you can search it. There is no report that it's stolen. And certainly, this Court, even in Brigham, in the in-bank court case, said we don't—the fact that it's not stolen doesn't mean that—the fact that there's no report doesn't mean that it's stolen. But I think the D.C. Circuit is right. There is no positive evidence that it's stolen. Well, I guess what I'm getting at is how would you have positive evidence that it's stolen if none of it matches? Like, you can't figure out what exactly is the car that you're looking at. You would have a report that it's stolen, which certainly would do it, but it's not necessary. In a lot of cases, you would have the driver doing something that is suspicious. Mr.—in the discussion in Ponce of standing, they talk about the guileless driver. Mr. Fuentes Rodriguez was truly guileless. He says, I don't have a license. And he even admits, yes, I smoke marijuana, okay? There's none of the stuff that you have in the other cases of fake IDs, people with warrants, maybe painting on the vehicle. I think, as the D.C. Circuit says, the officer just stopped too soon. Mr. Fuentes Rodriguez said, I'm buying it from my uncle. The officer could have said, let me talk to your uncle. The officer could have—the registration on the vehicle is actually on the outside now in Texas. It's right there on the window shield. The officer could have checked the registration. Let me ask you, don't the briefs here indicate, at least to me, that the government more or less concedes that he was in lawful possession of the car? I believe that the government conceded that, yes. Don't contest it, really. That's my argument about waiver and standing. Well, they concede he's in possession as the owner. I don't know that—I would love to say they concede that it wasn't a stolen vehicle, but I'm not sure that they— I thought he—did he explain to the arresting officers that he had bought it from his uncle and was making payments on it? Exactly, Your Honor. And if he bought it from his uncle and was making payments on it and they don't challenge that, then it doesn't seem to me they're challenging that he's in lawful possession. I agree, Your Honor, but I think that goes more to the standing issue because, as Judge Oldham mentions, the officer is not satisfied. The officer believes he thinks—he believes—he thinks it might be stolen. And he's forthright, too. He says, I searched that vehicle because it might be stolen. But, again, as the court said in Jackson, there's lots of reasons that somebody would put the plates on the vehicle that don't match the vehicle. So I don't think the government concedes that the vehicle is not a stolen vehicle. They certainly never proved it, and they didn't prove it six months later. But the officer says, I believe, as Judge Duncan—as Judge Oldham talks about, if the plates don't match, I want to search, and I think it might be stolen. But I think it's critical in terms of, you know, rights of private property and all of those that for an officer to seize a vehicle for a regulatory violation, that violates the Fourth Amendment. Can I ask you about—I'm sorry, finish your thought. I wanted to ask you about marijuana. And the premise of my question—I'll make it explicit—is that we are reviewing a motion to suppress. First question is, don't our cases allow us to review the record? And if we could, you know, sustain and affirm on any ground supported by the record, can't we do that? And the reason I'm asking that is because it's not clear to me what the district court found with respect to probable cause, if anything, whether it was with respect to being stolen or detecting the scent of marijuana. But could we affirm based on a record? The government agrees that the district court actually didn't find probable cause. Okay, but let's assume that the district court didn't. But, you know, if there was, in fact, probable cause, we don't have to worry about inevitable discovery. Can we review the record and find that? Yes, but I think the problem in this case is what the judge said, is the marijuana is a red herring. Well, okay. All right. Well, he said that. But what does, what if, what if I looked at the record and said, well, the officer smelled marijuana? I think that the, I think, and the government talks about the proper course is a remand because the officer makes that claim, but he, he claims to have smelled marijuana twice and at that time is still telling Mr. Fuentes Rodriguez, just get somebody to pick up this vehicle, which undermines the credibility of his, of his claim. I think, we don't know what a red herring is, but I think, we don't know if the judge means I didn't really think he knew that or he smelled that or whether the judge says, I don't need to reach it because I think he could keep the vehicle. If there were a finding, okay, if, if, if, let's just say for the sake of argument there were a finding or we could look at the record and say, well, the officer, in addition to having suspicions about the vehicle being stolen, smelled marijuana, couldn't, wouldn't that give him probable cause to search the car? I was sitting here musing about that. That is what the case law says. My answer, I guess, is that now under Texas law, there are people who can legally have marijuana and therefore it is no longer the case that the possible scent of marijuana is that you can search the vehicle. Well, the times, they are a changing, right? Yes, they are, Your Honor. As Bob Dylan once said. Well, okay, fine, thank you. But, Ms. Myers, we have, I mean, my understanding is that we have multiple cases going back 30 years that say the scent of marijuana standing alone, and I can, I'll read you the quote. The smell of marijuana itself justifies the subsequent search of a car, including locked compartments like a trunk. And those cases go back at least to the 1990s. So, I suppose, you know, in light of changing events and changing rules on marijuana, maybe those need to be reconsidered. But as we sit here today, that's certainly the rule that just the smell of marijuana is sufficient to look in the trunk and presumably the center console and the glove compartment, right? Well, at least it's sufficient to look in the passenger compartment, Your Honor. But I do think that this record is not clear enough for this court to make that determination. It's interesting. I heard you earlier when you were describing the officer's interactions about picking up the car or whatever. But at the moment, am I understanding the timeline of the dash cam video properly that at the moment the officer is saying things like, find someone else to pick up the car, et cetera, he had, that's at the point where he has consent from Mr. Fuentes Rodriguez to search before the car, right? Because the first thing Mr. Fuentes Rodriguez says is, sure, go ahead, there's nothing illegal in it. Then later, obviously, he says, no, I don't want my car searched. There's not even a mention of consent when he talks about releasing the car. He doesn't even talk about searching the car until the third encounter, which is when he's decided to search the vehicle and Mr. Fuentes Rodriguez actually withdraws consent. But in the beginning, he's just saying, pick it up. And I think the concern is the idea that just because he has a suspicion that somehow the officer can just take this vehicle and hold it and seize it without probable cause and then that becomes the basis. There's, there's nothing in this record that says he, he should or could impound the vehicle based on what was a regulatory violation. And that's what the inventory search normally flows from. And in this case, the only evidence of an inventory search is after arrest. And the officer is very clear that Mr. Fuentes Rodriguez was not arrested at the time of the search. If there are no further questions, I'll save my time for later. Thank you. Thank you. Mr. Goldman. I didn't properly welcome anybody to the Fifth Circuit this morning because I'm so new at being presiding judge. So welcome everyone to the Fifth Circuit and we appreciate you being here in person. Your Honors, Counsel, may it please the Court. My name is Adam Goldman and I represent the United States in this matter. Your Honors, we're asking this Court to affirm the decision denying the motion to suppress for three reasons. The first reason I'd like to address is the issue of inevitable discovery because I would like to clarify certain things that were stated. The video we believe makes what happened very clear in this case as well as the transcript. First of all, as this Court knows from the video, if it's watched it, the stop was in a residential area. Carter then comes to a stop right before a fire hydrant on a busy two-lane road, basically blocking the lane of traffic as the video shows, and he then notices that the tag has expired. He then goes for the first encounter that Ms. Myers mentioned. He asks for the license and proof of insurance and all he gets is a photo ID and no license. As he testified to, based on having no license, and he stated this in the testimony, that he could have actually arrested Mr. Fuentes Rodriguez at this point. So this was not a regulatory violation. However, in his discretion, he did not want to arrest him at this time. So he told him, try to find some, when he came over for the second time, he tried to ask him if he could find somebody to pick the car up. So this is going on, he then asks, he says you can get somebody to pick it up, and he then notices the odor of marijuana that he said was dressed up in cologne. And he then, going back to something Ms. Myers said, he actually very inartfully stated on page 142 of the transcript. Let me ask you, at what point was the defender arrested? The defender was arrested not until after the gun was found, but he was in custody after that, after the human trafficking encounter. Even though they detained him and handcuffed him and put him in the police car? Is that right? And he was not arrested. Is that your position? That is our position, Your Honor. He was not officially under arrest. He was in custody for Miranda purposes. He was not free to leave while the investigation took place. But he was not being charged with a crime at that point. The officer, in fact, said, I'm going to detain you while I figure out what's going on. And that is based on, importantly, what happens on page 141, lines 11 through 22 of the record. And this is sort of the important point. So at what point did the arrest occur? Because the police did say, I am not putting you under arrest even though he was bound and couldn't leave and so on. At what point was he put under? He was put under arrest, Your Honor, we would submit when the ammunition and the firearm was found. After the search? After the search, Your Honor. So what happens, though, Your Honor, for the inventory search purposes is everything changes when he goes back to the car the second time and he then discovers that the license plate and the VIN don't match. And that is why lines 11 through 22 of page 141 of the record is so important because it is at that point, that very point when he makes that determination that, as Your Honor, Judge Jolly mentioned, at that point where he decides to detain the person, that's when he decides he's not going to let the car be released to somebody. He's going to have it towed. And he testified to this and there's nothing contradicting that. And the fact that he may have made the call for the tow truck later on, Your Honor, we submit that is irrelevant. There's no case law stating that the call for the tow truck must happen immediately thereafter. So it's after that third time when he goes up and he specifically says, you're going to be detained while I figure out what's going on. He then testifies that it was at that point he was going to have the car towed. And, Your Honor, we would submit this just makes sense. First of all, you can't have the defendant take the car because he doesn't have a license. So by definition, he can't drive the car. The other circumstances are that there's no insurance for the car. As stated at the end of that first video, about the 47th minute, Your Honor, it actually states that the owner of the car, according to the computer, is Geico. The prior owner is Christina. So there's no actually no record of any sort of uncle owning this car. That's what came back. And then you have this mismatching VIN and license plate. And so there's no basis. And also, you have a car sort of stuck in traffic in front of a fire hydrant. We would submit, Your Honor, that as a case cited by counsel in her reply brief, I believe it's called McKinnon. That case noted that there was this, for lack of a better term, this community care responsibility the police officers have, including removing cars from busy roads such as this one. So it's at this point that he has to have the car towed or that he makes a decision. He had discretion whether or not what to do with the car. And it's at this point that he decides to have the car towed. And after this, that's when he then has an issue with the asking first for permission to search. There is first consent. And then, as we all know, the defendant withdraws his consent. And he then states, I have PC because the tag and the VIN don't match. And he later states that he also had PC, as indicated in his police report, which was filled out just thereafter, that it was also based on the marijuana. And again, he used the term, I had a brain fart when talking to Mr. Fuentes Rodriguez. So your view on inevitable discovery, at least the argument you're making, is that, you know, the doctrine applies because there is this separation of the ultimate impoundment, in search of the car, from any possible problems with probable cause. Is that the idea? There has to be some kind of distance between those two things. I wouldn't say a distance, but the fact is that it was reasonably probable that there would have been the search later on, as you noticed, Judge Duncan, that when the car is towed, that's when the inventory search has to be done and would have been done.  All right. And that's sufficiently sort of conceptually distinct from, I have probable cause to search the car. We can just put that to one side, in your view, and just focus on inevitable discovery. That is correct, Your Honor. And we believe that's sort of what the court was getting at. We do know that the decision, you know, it wasn't a written decision. It was sort of a quick decision. And it begins with Judge Hoyt telling myself and Mr. Gallagher, you can tell me where I went wrong. We, of course, thought he went right, so I didn't say anything. But he then talks about how he's not dealing with probable cause. In fact, he says that the issue of probable cause of the marijuana is a red herring. Okay. So in your view, there is no finding of probable cause. There's not even an analysis of probable cause in the judge's oral ruling? It looks like he's stating, for lack of a better term, the term that I think he uses, that there's probable cause to detain the vehicle. Okay. I believe that the, if I can find the exact term, he had full authority to detain the vehicle and hold it for an inventory search pursuant to releasing it to the rightful owner. And at that time, he did not know who the rightful owner was. He had a mismatched tag with license plate. He had GEICO. He had a prior owner, Christina. So it was not clear as to who the owner was at that point. Am I correct or am I incorrect to say that on appeal, you are not contesting that he was in rightful possession of the automobile? Your Honor, we are actually contesting that. And I will explain why, moving on to that point, Your Honor. We did not raise it initially. But on page 165 of Judge Hoyle's decision, we submit that that's where he raised it sua sponte with the following two sentences. Since Mr. Fuentes was not an owner, Mr. Fuentes cannot protest whether or not he searched the vehicle or not. I'm not really sure that he has the right to give permission and withdraw it and then say I did not give you permission. Your Honor, when I read that or when the United States reads that, we read that as an alternate basis based on a lack of Fourth Amendment standing. And we do believe that, although it's not as clear cut as the inevitable discovery issue, we do believe the record does support that for the main reason that it is the defendant's to establish that Fourth Amendment standing. And in this case, Your Honor, what we have is we have, at the end of the day, an insurance record, a computer record stating that Geico is the owner and that the prior owner is Christina. He makes the statement that he's the owner. Then he says that actually his uncle is the owner and that he's paying it off. And then he says that he's the owner, but he's still paying his uncle. And that combined with the mismatched tag, the expired tag to the VIN, we submit means that he did not meet his burden. I understood what you earlier said was that you're resting altogether on the inventory search. I mean, after the arrest, after the car was impounded, the search that occurred after that, the inevitable discovery is what you're relying on for the legality of the evidence. That is our primary argument, Your Honor. We believe that is sort of the most clear cut, the strongest argument we have. But we do believe there are two other bases on which the court can affirm. What's the underlying crime here? It's possession of the firearm, right? And or ammunition, Your Honor. Or ammunition. Under 18 United States Code section 922 G5A, it is against the law for an illegal or unlawful alien president of the country to possess a firearm or ammunition that has been traveling in interstate commerce. And as stated in his plea agreement, he conceded that both the ammunition and the firearm were both traveled to interstate commerce. Okay. I guess just thinking here, I'll mimic Judge Hoyt here. Tell me why this is wrong. If he doesn't have lawful possession of the vehicle, does that present a problem for the underlying offense? No, Your Honor, because we would submit that's, there's apples, that's the issue of Fourth Amendment standing is different from the issue of constructive possession. So whether or not he actually controls the car or possesses a car such that he has dominion and control over areas, whether it be the glove compartment or that area in the middle or the trunk, that goes to the issue of possession and dominion and control via constructive possession. I got it. And we submit that separate from the issue of the requisite Fourth Amendment standing that he did not meet his burden on. Are you not making, I don't recall from your brief, are you making an independent probable cause argument that we could review this record and find that there was sufficient? Yes, Your Honor. So we did notice that there are sort of, we submit there is probable cause based on sort of two grounds. Number one is the marijuana issue, as Judge Oldham noted. And we would note that, Your Honor, although Ms. Myers said the law is changing and the times are changing, at the time the law was, or I think it still is, that marijuana, the scent of marijuana is a basis. So although this was not addressed previously about challenging that basis for probable cause. In your view, if we went that direction, would we have to remand? We do not think so, Your Honor. We think the facts are sufficient in the record that the court does not need to remand. What about Judge Hoyt saying marijuana is a red herring? We read that, Your Honor, to say that that's sort of a side issue, not something he has to address. But because the factual basis for finding probable cause is sufficient in the record, that affords this court the ability to address that issue. We know this issue was dealt with, I believe, in Chacon and Guzman, and that it states that, you know, although sometimes, or I guess normally, it can be remanded when there is the sufficient factual basis that this court can make the decision. It can't make that decision on its own. And we submit the record here is strong enough on that issue. Mr. Goldman, can we go back to standing for a second? We have said all the time, and we hold when the criminal defendant is the appellant and fails to raise something in the district court, we say all the time, you can't raise stuff on appeal for the first time. You should have raised in the district court. Why would we apply a different rule to the government? I read your Fourth Amendment standing section, looking with great earnest, waiting to see the case where you would say, somehow this can come up for the first time on appeal, and I did not see it. Perhaps it's there, and you could direct it to me now. Yes, Your Honor, we submit that we did not raise it, and I'm conceding that we did not raise it, that it's proper before this court because the court raised it sua sponte. And why does that matter? I mean, you still had the basis that you needed to challenge it and litigate in the district court either way, right? We submit that it's proper, Your Honor, because in this case, the judge, when reading those two sentences, we believe that formed a basis of his decision, sort of an alternate basis to the inevitable discovery we've been discussing. And we do believe that decision was proper, and we do believe that he, it may not have been the biggest opening to challenge that, but he did state on the beginning of page 164 of the record to myself and to Mr. Gallagher, you know, sort of let me know where I'm going off course or let me know where I'm wrong, and we submit that when he, that combined with the fact that he did raise it sua sponte later on, if I or Mr. Gallagher disputed that, we had the option to then say, Your Honor, we sort of think you're off track on this, we'd like to brief this further or have further evidence on this, but that— But two sentences in a sentencing transcript hardly gives Mr. Fuentes-Rodriguez the opportunity to stand up and make the factual predicate of his Byrd argument, right? So we have, this is the thing that's, that is odd about it, is if it's just two sentences in a discussion, and no one raises their hand and says, we'd like to talk about Byrd, and we'd like to talk about standing, it just, it seems odd to make it the principal argument for the government on appeal. Your Honor, we do, I do concur that it wasn't sort of the biggest opening and wasn't the clearest basis, but when he does state, you can tell me where I went wrong, I think at that point the parties are afforded an opportunity to then state, Your Honor, I don't want to, I don't want to pretend to be the assistant public defender in this case, but to state, for example, Your Honor, at this point we think that those two sentences about standing are incorrect, I would like a chance to address that and then have that opportunity to do so. But he doesn't even say the word standing, that's the thing, he just says it's not obvious that he had, what is it, lawful possession of the vehicle or something like that. Well, he said that since he was not an owner, he cannot protest whether or not he searched the vehicle or not, and we would submit that that term, you know, cannot protest is akin to the Fourth Amendment standing. Yeah, you, so the government said nothing in response to that, that statement by the  We did not, I did not, Your Honor. And I'll ask Ms. Myers, but do you recall, did the defendant's counsel say, oh no, Judge, that's, that's incorrect? He did not either, Your Honor. Nothing was said? Nothing was said by myself or Mr. Gallagher. And so that's why we acknowledge that that's not sort of as clear cut as what we see as the inevitable discovery issue and the probable cause, but we do believe that it was properly, a proper basis nonetheless. Okay. Let me, what is the weakness in your, your inventory argument that prompts you to rely on all these other issues that were not really raised in the district court below? I don't think there is a weakness, Your Honor, I'll be frank, but we do believe that, I hate to call it a matter of strategy, when there are alternate bases in addition to what we think is a clear cut case such as inevitable discovery, they should be raised to this court for this court to consider in the alternative. But we, I'll be, I, it is our position that there is no weakness in the inevitable discovery argument here. The car sort of had to be towed at that point. It was, he couldn't drive it, it was in the middle of a busy street parked in front of a fire hydrant. It was four o'clock, rush hour is about to hit in Katy and Fort Bend County. It was five o'clock, it's about to hit, that car's got to be moved, and the owner, whoever the owner is, is not, it's totally unclear, and when that VIN and that tag do not match, it's very clear, there's no contradiction to his statement, his testimony, there's no finding that it's not credible, and of course, as the case law states, this court should view the evidence in the light most favorable to the government and accept the findings of fact. Once he says that those, that tag and that license doesn't match, that's when he decided he wasn't going to allow a third party to come get the, get the, get the car. It seems like a lot of noise around the government's position here if the inevitable discovery is solid as it really appears to be. Well, Your Honor, we, we, we do think that it is, we do think the inevitable discovery issue is that strong, so. If there are no further questions, I will rest on your brief and ask for an affirmance. Thank you. Ms. Myers, you have some time for rebuttal. Forgive me for not welcoming you to the Fifth Circuit, but you've been here before, haven't you? I've been here so many times, I feel so welcome. We're glad to have you back, in person. In answer, nobody objected, nobody mentioned anything about standing. The judge did say, correct me if I'm wrong, but he jumped from what he was saying to when do we have a trial, so. And the reason I address it is the court sort of addressed it, but I don't think that the government can now say we didn't prove it, that we didn't present enough evidence. In terms of probable cause and inevitable discovery, I actually think inevitable discovery depends on probable cause, because there is no reason to keep the vehicle unless the officer has probable cause. That's what I was asking, Mr. Goldman. It seems that there has to be some kind of conceptual, I don't know, that's probably the wrong word, distinction between the two in order for inevitable discovery to work. And you heard what he's saying. He's saying, well, look, there was no license, mismatch on the license in the VIN, license plate in the VIN, it's rush hour traffic, the officer, nobody's going to come in, they're not going to let this car be driven away. Why can't we say that's a path to inevitable discovery? We don't have to worry about stolen marijuana. Because the court actually said the officer was detaining it until he could release it to a proper third party. There is no determination that the officer has the right or lawful authority to keep the vehicle, not to release it to somebody else, and that's why— Is it the officer's option? I understand the judge's ruling is what it is. At that point, is it the officer's option in your view to say, well, look, we can get somebody to come take this or we can have it towed away? In this case, the government, as opposed to the case law, failed to establish that the officer had any basis to have it towed away other than probable cause. If he arrested Mr. Fuentes, then— Probable cause that the vehicle was stolen. Pardon? Probable cause that the vehicle was stolen. That's your view, or just probable cause? I would like to believe stolen is the only issue as opposed to marijuana, but yes, probable cause that it's stolen. What were they going to do with the automobile? He couldn't drive it. He had no license. Leave it on the side of the road or what? Throughout this case, the officer said they were going to release it to the rightful owner. But isn't the rightful owner Geico or Christina? You know, actually, I didn't realize I was in the record. The fact that it says Geico suggests that it's a salvage vehicle, which is why you would have the different tags on it. And so it's clear Geico's not the owner. The title just hasn't been transferred. And had the uncle come or even had the mother come and said, you know, I'm allowed to take this vehicle, then the vehicle would have been released. The only reason for not releasing it at the time was Mr. Fuentes Rodriguez didn't have authority to drive it. But normally when officers issue citations, even if the inspection sticker's expired, you get to drive it off the road and then explain to a municipal judge why you didn't register the vehicle. But he doesn't, in contrast to cases like McKinnon where he has to move the car because he's arresting the defendant, which, of course, his own policy says. In this case, what he was going to do until he decided, as the government says, it's critical, he decided I'm going to search the car because I have a hunch that it's stolen. And a hunch that it's stolen is not a basis for a search. He's got to have probable cause in order for us to get to inevitable discovery. Because there's no reason, it's not like offerment or anything that the car is obstructing traffic if he's going to release the vehicle. Thank you, Your Honor. Any more questions? Thank you, Ms. Myers. Thank you. We appreciate the argument. Case is submitted. While counsel packs up, we will hear.